## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

JAMES JENKINS, WILLIE C. BLUE,
and CARL FUTRELL, On Behalf Of
Themselves And All Others Similarly
Situated                                    )
                                            )
                                            )
            Plaintiffs,                     )
    vs.                                     )
                                            )
THE UNITED STATES DEPARTMENT      )      No.
OF HOUSING AND URBAN                 )
DEVELOPMENT (HUD), SHAUN            )
DONOVAN, in his Official Capacity as   )
Secretary of HUD, and the              )
HOUSING AUTHORITY OF COOK          )
COUNTY (HACC), an Illinois Municipal   )
Corporation,                           )

            Defendants.

## COMPLAINT

## INTRODUCTORY STATEMENT

1.      This is an action brought by a proposed class of current residents of the Celina Blake

Homes and low-income families in need of public housing who will be involuntarily displaced

from public housing or denied the benefits of public housing if the Housing Authority of Cook

County (HACC) and the United States Department of Housing and Urban Development (HUD)

proceed with the demolition of the Celina Blake Homes.

2.      Celina Blake Homes is a 100-unit public housing development owned and managed by

the HACC. Celina Blake Homes enables plaintiffs and their families to live in decent, habitable,

and affordable housing in the Village of Ford Heights. Celina Blake Homes provide an

important resource for larger, low-income African-American families, with over half of its units

consisting of three, four, and five bedroom homes. The HACC receives federal dollars to maintain and provide public housing for these low-income tenants.

3.     Without intervention by this court, Celina Blake Homes will be permanently lost as a source of family public housing during one of the worst economic downturns in this country since the Great Depression. With approval from the HUD, the HACC intends to demolish all 100 units of public housing comprising the Celina Blake Homes.

4.     Plaintiffs who are residents of the Celina Blake Homes will be displaced from their homes and historic community and moved into principally poverty concentrated and racially segregated parts of Cook County. Families on the public housing waiting list and other families in desperate need of affordable housing in the community will have to wait that much longer for affordable housing, while they struggle with homelessness and make daily decisions about how they will pay for food, medicine, utilities, or rent.

5.     The demolition of the Celina Blake Homes is part of a pattern and practice by the HACC, with HUD approval, of substantially reducing the available supply of family public housing supplied by the HACC. At the same time, the HACC has engaged in a pattern and practice of not leasing up available family public housing units. Both of these actions adversely impact the thousands of low-income families and African-Americans who need and are proportionally more eligible for this housing.

6.     HUD's approval of the HACC's application to demolish the Celina Blake Homes contravenes federal law, by allowing the HACC to ignore federally mandated statutory and regulatory requirements that must be met before a local housing authority may demolish federal public housing. (Hereinafter HUD and the HACC may be collectively referred to as "Defendants.")

1

7.      Defendants' actions violate their statutory and regulatory duties, including Section 18 of the United States Housing Act of 1937 (Section 18) and its implementing regulations, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), its executive orders and implementing regulations, the Quality Housing and Work Responsibility Act of 1998, and the Administrative Procedure Act.

8.      Plaintiffs are faced with an imminent threat of irreparable harm. Plaintiffs seek declaratory and injunctive relief from this Court to end Defendants' unlawful demolition of the Celina Blake Homes and the illegal displacement of its public housing residents.

## JURISDICTION

9.      This court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 3613 (fair housing), and 5 U.S.C. § 704 (authorizing judicial review of final agency actions.)

10.     Plaintiffs seek declaratory and injunctive relief against the Defendant, pursuant to 28 U.S.C. §§ 2201, 2202.

## PARTIES

**The Named Plaintiffs.**

11.     Plaintiff James Jenkins is a 56 year-old African-American male who currently lives at 975 E. 15TH Street, Ford Heights, Illinois, in the Celina Blake Homes, with his young granddaughter. He has lived at the Celina Blake Homes for over ten years and wishes to remain there with his family because the Celina Blake Homes apartment provides his family stable, affordable, and suitable housing. The HACC has not provided Mr. Jenkins assistance identifying a unit that he can use with a Housing Choice Voucher. Rather, the HACC notified Mr. Jenkins that he and his family will be involuntarily displaced on March 15, 2011 to another HACC development. Mr. Jenkins wants to stay in the Celina Blake Homes.

2

12.     Plaintiff Willie C. Blue is a 77 year-old African-American male who currently lives at 940 E. 15th Street, Ford Heights, Illinois in the Celina Blake Homes, with his three adult children. He has lived at the Celina Blake Homes on or off since 1959 and permanently moved back to the development in 1996 in order to raise his children after their mother died of cancer. The HACC has only provided Mr. Blue with a three-bedroom Housing Choice Voucher even though he currently has a four-bedroom public housing unit. Even though Mr. Blue is legally blind, the HACC has provided him no help in identifying units to rent with his voucher. Mr. Blue would like to stay in the Celina Blake Homes.

13.     Plaintiff Carl Futrell is a 51 year-old African-American male who currently lives with his young daughter in Ford Heights, Illinois, near the Celina Blake Homes. Because he and his daughter are without the benefit of affordable housing, and their combined incomes are very limited, they struggle every day to maintain their housing, utilities, put food on the table, and cover other basic necessities. Mr. Futrell was on the public housing and Housing Choice Voucher waiting lists from 2005 to 2009. Even though he diligently attempted to comply with the HACC's waiting list obligations, Mr. Futrell was removed from the public housing and Housing Choice Voucher waitlists in 2009. In 2010, Mr. Futrell contacted the HACC to determine if he could rejoin both waiting lists. The HACC told Mr. Futrell that the public housing and Housing Choice Voucher waitlists were closed.

        **The Defendants.**

14.     Defendant HUD is the federal agency charged with administration and enforcement of all federal laws and regulations relating to the demolition of federal public housing, including compliance with the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*

15.     Defendant Shaun Donovan is the Secretary of HUD, and, as such, is charged with the administration and enforcement of all functions, powers and duties of HUD, including those

related to the demolition of federal public housing and the Fair Housing Act. Defendant Donovan is sued in his official capacity. Hereinafter, Defendants HUD and Donovan are referred to collectively as "HUD."

16.     Defendant Housing Authority of Cook County (HACC) is an Illinois municipal corporation, created and existing under the Illinois Housing Authorities Act, 310 Ill. Comp. Stat. 10/1 *et seq.* The HACC is a Public Housing Agency within the meaning of 42 U.S.C. § 1437.

17.     At all times pertinent hereto the Defendant HACC has acted in its official capacity and under color of state law.

## CLASS ACTION ALLEGATIONS

18.     Named Plaintiffs James Jenkins, Willie C. Blue, and Carl Futrell bring this action on behalf of themselves and, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of all persons similarly situated. The Plaintiff class is defined as:

> All eligible low-income persons either (i) residing at or involuntarily displaced from the Celina Blake Homes or (ii) on the waiting list for or who are eligible for and in need of public housing within Cook County.

19.     **Numerosity.** The class is so numerous that joinder of all members is impractical. Upon information and belief, it is comprised of (i) approximately 100 current or former households of the Celina Blake Homes and (ii) 5,136 households on the 2011 public housing waiting list for the Housing Authority of Cook County and at least 330,922 households in Cook County in need of and eligible for public housing with the Housing Authority of Cook County. See Declaration of Eli Wade-Scott, attached as Exhibit B.

20.     **Commonality.** There are questions of law and fact common to the class as a whole. Additionally, the HACC and HUD have acted and refused to act on grounds generally applicable

to the Plaintiff class, thus making appropriate final injunctive and declaratory relief with respect to the class as a whole.

21.     **Typicality and Adequacy.**  The individual claims of the class representatives are typical of the claims of the class, and the class representatives and their counsel will fairly and adequately protect the interests of the class.

## STATUTORY AND REGULATORY FRAMEWORK

22.     The United States Housing Act of 1937 declares that it is "the policy of the United States to promote the general welfare of the Nation by employing its funds and credit … to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families…" 42 U.S.C. § 1437.

23.     The national housing goal is the realization as soon as feasible of "a decent home and a suitable living environment for every American family." 42 U.S.C. § 1441.

24.     The demolition and disposition of public housing is authorized under Section 18 of the United States Housing Act of 1937 (Section 18), as amended in its entirety by the Quality Housing and Work Responsibility Act (QHWRA) of 1998. 42 U.S.C. § 1437p.

25.     HUD has promulgated regulations, at 24 C.F.R. part 970, detailing the administrative steps required to perform demolition/disposition activity in accordance with Section 18.

26.     Before demolishing all or part of a public housing development, Section 18 and 24 C.F.R. § 970 requires the local public housing authority (PHA) to submit a demolition application, commonly referred to as a "Section 18 demolition application" to HUD for its approval. *See* 42 U.S.C. § 1437p(a), (b).

27.     The HUD Special Applications Center (SAC), located in Chicago, and the affected HUD local field office, are vested with the responsibility of evaluating the submitted application's

compliance with Section 18 and the other relevant federal laws. Based on that review, SAC and the local field office approve or deny the demolition application.

28.     Pursuant to Section 18, the principle burden of a PHA seeking to demolish public housing is to show in its demolition application that the property is physically obsolete. A property is physically obsolete if: (i) the public housing development to be demolished is obsolete as to physical condition, location, or other factors, making it unsuitable for housing purposes; and (ii) no reasonable program of modifications is cost-effective to return the development or portion thereof to useful life. (obsolescence requirement) 42 U.S.C.A. § 1437p(a)(1)(A). *See also* 24 C.F.R. § 970.15(a)(1).

29.     The PHA must also meet the certification requirements of Section 18 in order to gain HUD's approval for demolition. 42 U.S.C. § 1437p(b)(1); 24 C.F.R. §§ 970.7 and 970.15. For a PHA seeking to demolish public housing based upon physical obsolescence must certify its compliance with the physical obsolescence requirement under Section 18. 24 C.F.R. § 970.15(a)(1).

30.     The PHA must also certify compliance with the Section 18 and 24 C.F.R. § 970 relocation requirements, including offering comparable replacement housing located in an area not generally less desirable than the location of the displaced person's housing, housing counseling for displaced residents, and the payment of actual and reasonable relocation expenses. 42 U.S.C. §§ 1437p(a)(4); 24 C.F.R. § 970.21.

31.     The PHA must also certify compliance with the applicable civil rights laws, including the Fair Housing Act's duty not to discriminate, or advance policies that have an adverse disparate impact (regardless of intent) on protected classes. 42 U. S.C. § 3604; See Demolition Application, attached as Exhibit A at Tab 1.

32.     Finally, the PHA must also certify compliance with the duty to affirmatively further fair housing. 42 U.S.C. § 3608. The duty to affirmatively further fair housing requires the PHA to consider the impact of its actions on the goal of fair housing and to evaluate alternatives in light of their fair housing implications.

33.     HUD has a duty to disapprove a demolition application if it determines that any PHA certification is clearly inconsistent with information and data available to or requested by HUD regarding the requirements for demolition under federal law, including the PHA's "failure to meet the requirements for the justification for demolition under 24 C.F.R. § 970.15…". 42 U.S.C. § 1437p(b)(1); 24 C.F.R. § 970.29.

34.     HUD also has a duty not to discriminate, which includes an obligation not approve actions that have an adverse disparate impact on persons protected by the Fair Housing Act. 42 U.S.C. § 3604. Finally, HUD has a duty to affirmatively further fair housing, meaning that it must administer its programs, including the public housing program and related demolition process, in a manner that affirmatively furthers the policies and purposes of the Act. 42 U.S.C. § 3608. Like a PHA, HUD must consider the impact of its actions on the goal of fair housing and evaluate alternatives in light of their fair housing implications. *Id.*

## STATEMENT OF FACTS

### A.     The HACC's Proposed Demolition of the Celina Blake Homes

35.     On October 22, 2009, the HACC submitted its initial application to demolish all 100 units at the Celina Blake Homes. Ex. A.

36.     In its application, the HACC presented no immediate plans for the redevelopment of the Celina Blake Homes but instead stated it would relocate the remaining 59 households at the Celina Blake Homes with Housing Choice Vouchers. *Id*. at Tab 3.

37.     According to the HACC, its justification for the demolition of the Celina Blake Homes is that it is physically obsolete, suffering from numerous physical deficiencies including compromised foundations due to termite infestation, upgrading of the electrical systems, numerous items in need of replacement, including roofs, siding, hot water heaters, windows, piping, furnaces, and numerous upgrades including decorative bollards, trash masonry enclosures, and central air conditioning. *Id*. at Tab11. Pursuant to 24 C.F.R. 970.15, the HACC certified it met the statutory requirements for physical obsolescence.

38.     The HACC stated that it estimated that the cost of rehabilitation was $15,307,512, which was 62.94% percent of the total development cost limit. *Id*. at Tab 11. Total development cost is a means for determining the cost limits for the construction of public housing. 42 U.S.C. § 1437d(b)(2). Under HUD regulations, HUD does not consider a program of modifications to be cost-effective if the cost of such a program exceeds 57.14 percent of total development cost ("TDC"). 24 C.F.R. § 970.15(b)(2).

39.     The HACC also certified that it would carry out the demolition and relocation in conformance with the civil rights laws, including the Fair Housing Act, and that it would "affirmatively further fair housing in carrying out the proposed removal action." Ex. A, Demolition App. at Tab 1.

40.     As part of its plan to relocate the remaining households with vouchers, the HACC stated that it assessed the rental market in the area surrounding the Celina Blake Homes and found "a pool of available rental units where rents fell within the Tenant-Based Housing Choice Voucher

payment standards" including "Harvey, Markham, Dolton, Chicago Heights, and Calumet Park." *Id.* at Tab 7. These targeted communities proposed for relocation have high levels of minority concentration and poverty. Declaration of Eli Wade-Scott, attached as Exhibit B.

**B.    Plaintiffs' February 23, 2010 Challenge To The HACC's Demolition Application**

41.    On February 23, 2010, two of the plaintiffs, through their legal counsel, asked HUD to deny the HACC's application to demolish the Celina Blake Homes. Letter from William P. Wilen, Katherine E. Walz, and Samantha M. Tuttle to Ainars Rodin, February 23, 2010, attached as Exhibit C. Based on the inspection of the development by plaintiffs' consulting structural engineer, Donald Kimball Jr., Principal, K2N Crest, P.C., (Mr. Kimball) plaintiffs alleged that there was no evidence that the Celina Blake Homes was obsolete as to physical condition, location or other factors. Ex. C at 1.

42.    Mr. Kimball found that the development was not physically obsolete but rather a typical multifamily rowhouse apartment complex of a style typical in the United States. Mr. Kimball also found that the buildings appear to have been maintained overtime with proper replacements and improvements over the life of the development. Ex. C.

43.    Mr. Kimball also determined that HACC's estimated costs of rehabilitation were highly inflated and that many items identified for rehabilitation or replacement were in good working order. Ex. C at 2. Mr. Kimball also determined that the cost estimate included numerous upgrades to the development – trash masonry enclosures, decorative bollards, and central air conditioning, for example - entirely unrelated to returning the property to its useful life. *Id.* Mr. Kimball therefore concluded that "minimal investment and ongoing maintenance required to

maintain the property's useful life should cost a mere fraction of the costs indicated in the application and not come anywhere close to exceeding 57.14% of the [TDC]." *Id.*

44.    The February 23, 2010 letter also challenged the relocation of the Celina Blake Homes residents, all of whom are African-American families, into the Housing Choice Voucher program, arguing that the relocation plan offered as relocation sites communities with high levels of minority concentration and poverty. Ex. C at 3.

### C. HUD's Investigation of the Plaintiffs' Allegations

45.    In March 2, 2010 and April 22, 2010 letters to the Plaintiffs and the HACC, HUD advised the parties it would conduct a review of the HACC's demolition application for the Celina Blake Homes to determine if the property met the obsolescence requirement. Letter from Ainars Rodin to William P. Wilen, March 2, 2010, attached as Exhibit D, at 1. Letter from Ainars Rodin to Lorri Newson, Executive Director, HACC, April 22, 2010, attached as Exhibit E. HUD further stated it would investigate plaintiffs' concerns regarding the HACC's duty to affirmatively further fair housing, including whether the HACC's relocation plan for displaced residents must assist families in relocating to areas that are racially integrated. Ex. D, at 1.

46.    In an April 22, 2010 letter from HUD to the HACC, HUD reported that on March 3, 2010 and April 14, 2010 it had conducted an on-site inspection of the Celina Blake Homes. Ex. E at 1. HUD stated that at these reviews, HUD staff could "not confirm the validity of termite damage…" as alleged by the HACC in its demolition application. *Id.* HUD also found that "…the tuck pointing was intact and in good repair…" even though the HACC had stated in its demolition application that the site required $400,000 worth of masonry patching or repair. *Id.*; Ex. A at Tab 11. HUD also noted that the HACC had failed to "identify the rehabilitation work

10

required on a per unit basis" and directed HACC to submit supplemental data for nearly 40 identified obsolescence items "in order to complete the application and to [continue] processing your request." Ex. E. HUD also identified a number of items that were either not an eligible rehabilitation cost under Section 18 or where the HACC's stated rehabilitation cost appeared excessive. *Id.*

47.     On information and belief, the HACC did not submit the HUD-required and requested supplemental data or a revised itemized cost estimate, which should have reflected the reduced cost estimate in light of the ineligible rehabilitation costs and the excessive rehabilitation costs. Rather, the HACC submitted an Inspection Summary Report, which does not contain information regarding the cost of repairs, along with a certification that the property is severely physically distressed, which also does not contain information regarding the cost of repairs. The HACC also revised the estimated cost of rehabilitation to $18,473,662.00, which amounts to 66.34% of TDC. The HACC Supplemental Information, attached as Exhibit F. It is unclear what the more than $3 million increase in rehabilitation costs represents, as there is no information included regarding the cost of these seemingly new repairs to justify the increase. *Id.*

48.     Even though the HACC utterly failed to meet the terms of HUD's April 22, 2010 letter, on October 29, 2010, HUD approved the HACC's demolition application for the Celina Blake Homes, based upon its certification that it met the statutory obsolescence requirements under Section 18. Memorandum of Ainars Rodins to Steven E. Meiss, October 29, 2010, attached as Exhibit G. This approval came even though information and data available to and requested by HUD made it clear that the HACC's demolition application continued to lack proper cost estimates, contained exaggerated and/or ineligible costs estimates, included a mystery last minute addition of $3 million in unsubstantiated repair costs, and contained items HUD staff

11

found not to be obsolete. This approval came even though, based upon the above stated deficiencies, the HACC's certification of compliance with Section 18 obsolescence requirements was clearly inconsistent with information available to HUD that showed that the HACC failed to meet those requirements. And yet, HUD still found that the HACC met the obsolescence test for demolition, submitted a satisfactory relocation plan, and otherwise provided the proper certifications.

49.     HUD's approval memorandum also failed to provide any review of Plaintiffs' claims that the HACC was encouraging Celina Blake Homes' residents to move to predominately poor, minority communities. *Id.*

50.     On information and belief, HUD failed to investigate the fair housing implications of approving the demolition of the Celina Blake Homes, including its effect on families with children and African-Americans. On information and belief, HACC failed to investigate the fair housing implications of demolishing the Celina Blake Homes, including its effect on families with children and African-Americans.

51.     On information and belief, the HACC's relocation policies and practices for public housing families relocating with Housing Choice Vouchers – including targeting several predominately poor, minority communities for replacement housing - have the effect of discouraging the plaintiffs from inspecting or renting in predominately white or racially integrated neighborhoods in the Chicago metropolitan area.

52.     On information and belief, the HACC failed to provide any meaningful housing counseling services to residents, beyond distributing generic lists of potential rental units and offering bus tours, which would improve the chance that Celina Blake Homes' residents would move to more integrated communities.

53.     On information and belief, the housing specialists from the HACC, who were the primary resource for helping Celina Blake Homes residents relocate with their vouchers have offered little to no help in identifying other housing.

54.     On information and belief, the HACC also failed to take affirmative steps such as outreach to and recruitment of landlords in predominately white or racially integrated neighborhoods.

### D.     The HACC's Pattern and Practice of Making Unavailable and Eliminating Family Public Housing with HUD approval.

55.     The demolition of the Celina Blake Homes is part of a pattern and practice by the HACC of making unavailable and otherwise eliminating its supply of family public housing.

56.     On information and belief, since January 2008, the HACC has engaged in a pattern and practice of failing to lease up vacant, available units within its family public housing developments while continuing to lease up the senior public housing developments. *See* Declaration of Eli Wade-Scott, attached as Exhibit H.

57.     Between 2007 and 2010, the lease up rates for senior public housing developments far exceeded, on average, the lease up rates for family public housing developments within the HACC portfolio. Ex. H. This was the case, even though there were higher rates of vacancy at the family properties. *Id.*

58.     On information and belief, this failure to lease up the family public housing units has occurred even though there have been, on annual basis since 2007, up to 5,136 families on the public housing wait list and an estimated 171,012 non-elderly families in need. Ex H; Ex. B. The HACC's family public housing waitlist has been closed since January 29, 2010. Ex. H.

59.     As part of its obligations set forth in its Annual Contribution Contract for funding from HACC, the HACC has a duty to lease up these vacant family public housing units even if it intends to apply to demolish or otherwise dispose of these units in the future.

60.     As well, since 2003, the HACC has proposed to demolish more than 551 units of family public housing, while continuing to maintain and make available the 1,089 senior public housing units. Ex. H; Ex. H at Tab 30. The HACC has not proposed to demolish any of its senior public housing projects.

61.     Should all of these proposed demolitions, including the Celina Blake Homes, proceed, the HACC will have eliminated 76.2 % of the family public housing stock, leaving only 172 units available for low-income families on the public housing waitlist and other low-income families in need. Ex. H.

62.     On information and belief, both the HACC and HUD failed to investigate the fair housing implications of the HACC's pattern and practice of substantially reducing its supply of family public housing and not leasing up the available family public housing units, particularly as those policies impact families with children. The HACC and HUD also failed to consider alternatives to these actions which would better advance the principles and purposes of the Fair Housing Act.


## INJURIES SUFFERED BY THE PLAINTIFFS

63.     Defendants' actions threaten Plaintiffs with imminent and irreparable injury, including involuntary displacement from their homes, the permanent loss of 100 units of family public housing, the severing of personal, family and community ties, discrimination, and likely segregation in poor, minority communities.

64.     According to HUD's own data which is based on the 2000 U.S. Census, African-Americans in Cook County disproportionately experience housing problems, such as cost burdens, a lack of basic facilities, and overcrowding. While African-Americans comprise 23.9% of Cook County's population, 28.8% of the households experiencing housing problems were African-American. Moreover, 35.4% of renters with housing problems were African-American. Compared to white households, African-American households are over 2.5 times as likely to be low-income renters with housing problems in Cook County. Ex. B.

65.     There were 790 households on the HACC's public housing waitlist as of November 2009, which was the last time the waitlist was broken down by race and, on information and belief, after the waitlist was purged in 2007. Ex. H. Of these households, 63.54% (502) were African-American and 30.89% (224) were white. *Id.* Public housing applicants in Cook County are thus two times more likely to be African-American than to be white.

66.     Families with children are also disproportionately represented on the public housing wait list, with 37% (292) were families with children while 26% (212) were elderly households. Ex. H at Tab 28. The public housing waitlist was re-opened in December 2009 and closed on January 29, 2010. Ex. H. Over 4,000 households were added to the list and there are now approximately 3,723 families with children on the list, compared to 317 elderly households. *Id.* The public housing wait list remains closed.

67.     Families with children are also disproportionately represented among the Housing Choice Voucher waitlist, with 12,800 (85%) of the 14,935 total wait list households representing families with children. Ex. H at Tab 29.

68.     The Defendants' plans to demolish the Celina Blake Homes would have an adverse discriminatory impact on African-Americans and families with children because this group is

disproportionately eligible for subsidized housing and disproportionately represented among the

Celina Blake Homes residents and the public housing and Housing Choice Voucher wait list

applicants.

69.     Defendants' actions have caused and will continue to create a severe hardship for

plaintiffs and their families.

70.     The Plaintiffs have no adequate remedy at law.

## CLAIMS FOR RELIEF

### CLAIMS AGAINST HUD

#### VIOLATIONS OF THE UNITED STATES HOUSING ACT OF 1937 & 24 C.F.R. § 970

##### COUNT I: FAILURE TO ENSURE COMPLIANCE WITH SECTION 18 OBSOLESCENCE REQUIREMENTS

71.     Plaintiffs re-allege paragraphs 1 to 70 of this Complaint and incorporate them herein.

72.     Defendant HUD is an agency within the meaning of 5 U.S.C. § 701(b)(1) of the

Administrative Procedure Act.

73.     By approving the HACC's demolition application for the Celina Blake Homes after it

determined that the defendant HACC's demolition application contained numerous errors,

omissions, exaggerations, and non-obsolete items, and after defendant HACC failed to comply

with defendant HUD's request for certain supplemental information, defendant HUD violated its

duty not to approve the demolition of federal public housing without first requiring housing

authority compliance with 42 U.S.C. § 1437p(a)(1)(A) and its implementing regulations at 24

C.F.R. § 970.15(a).

74. By approving the HACC's demolition application for the Celina Blake Homes, even though the HACC's certification was clearly inconsistent with the information and data available to HUD, which showed a failure by the HACC to meet the demolition requirements under Section 18, HUD violated its duty to disapprove such an application pursuant to 42 U.S.C. § 1437(b)(1).

75. Pursuant to the Administrative Procedure Act, 5 U.S.C. §706 (2007), Plaintiffs are entitled to declaratory relief and judgment.

## COUNT II: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

76. Plaintiffs re-allege paragraphs 1 to 70 of this Complaint and incorporate them herein.

77. Defendant HUD is an agency within the meaning of 5 U.S.C. § 701(b)(1) of the Administrative Procedure Act.

78. Despite the violations alleged above, defendant HUD approved the defendant HACC's demolition application, even though 42 U.S.C. § 1437p(b)(1) requires it to disapprove an application when the PHA's certification that it had met the statutory and regulatory requirements for obsolescence is clearly inconsistent with the information and data available to HUD. Defendant HUD thus took actions that were arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory authority and without observance of procedures required by law, within the meaning of 5 U.S.C. § 706(2)(A),(C),(D).

## CLAIMS AGAINST THE HACC

## VIOLATIONS OF THE UNITED STATES HOUSING ACT OF 1937 & 24 C.F.R. § 970

### COUNT III: FAILURE TO MEET THE DEMOLITION TEST

79.     Plaintiffs re-allege paragraphs 1 to 70 of this Complaint and incorporate them herein.

80.     Defendant HACC is a "person" within the meaning of 42 U.S.C. § 1983, and its actions described herein were taken under color of state law.

81.     By submitting a demolition application for a public housing project that is not obsolete as to physical condition, location, or other factors, and for which there is a reasonable program of modifications that is cost-effective to return the development or portion thereof to useful life, defendant HACC violated its duty not to demolish federal public housing without first complying with 42 U.S.C. § 1437p and its implementing regulations at 24 C.F.R. part 970.  By certifying that it had met the statutory and regulatory requirements for demolition under Section 18 when it had not complied with these requirements, HACC violated its duty not to demolish federal public housing until it complied with 42 U.S.C. § 1437p and its implementing regulations at 24 C.F.R. part 970.

### CIVIL RIGHTS CLAIMS AGAINST BOTH DEFENDANTS

### Claims under Title VIII of the Civil Rights Act of 1968 , Executive Orders 11063 and 12892, and the Quality Housing Work Responsibility Act of 1998

### COUNT IV: ADVERSE DISPARATE IMPACT ON AFRICAN-AMERICANS AND FAMILIES WITH CHILDREN

82.     Plaintiffs re-allege paragraphs 1 to 70 of this Complaint and incorporate them herein.

83.     Defendant HUD is an agency within the meaning of 5 U.S.C. § 701(b)(1) of the Administrative Procedure Act.  Defendant HACC is a "person" within the meaning of 42 U.S.C. § 1983, and its actions described herein were taken under color of state law.

84.     Defendants' actions as described above will have an adverse disparate impact upon plaintiffs as African-Americans, and families with children, and therefore, constitute a violation of the Fair Housing Act, 42 U.S.C. §§ 3604, 3613, as further elaborated by 24 C.F.R. §§ 100.50, 100.65, 100.70, 100.75, 100.80 and the Quality Housing Work Responsibility Act of 1998, 42 U.S.C. § 1437c-1(d)(15).

85.     Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, Plaintiffs are entitled to declaratory relief and judgment.

## COUNT V:    FAILURE TO AFFIRMATIVELY FURTHER FAIR HOUSING

86.     Plaintiffs re-allege paragraphs 1 to 70 of this Complaint and incorporate them herein.

87.     Defendant HUD is an agency within the meaning of 5 U.S.C. § 701(b)(1) of the Administrative Procedure Act.  Defendant HACC is a "person" within the meaning of 42 U.S.C. § 1983, and its actions described herein were taken under color of state law.

88.     By displacing plaintiffs from their homes in public housing, operating a relocation program that will cause plaintiffs to likely become segregated into predominately African-American neighborhoods, failing lease its available family public housing, substantially reducing its supply of family public housing, and failing to investigate the fair housing implications of its above stated actions, defendant HACC violated its duty to affirmatively further fair housing pursuant to 42 U.S.C. § 3608(e)(5) (2007); 24 C.F.R. §§ 960.103(b), 107.20(a), 903.7(o), 982.53(b), (c); Exec. Order No. 11,063 (27 Fed. Reg. 11,527 (Nov. 20, 1962); Exec. Order No.

12,892, 59 Fed. Reg. 2,939 (Jan. 17, 1994); and the Quality Housing Work Responsibility Act of 1998, 42 U.S.C. § 1437c-1(d)(15).

89.     By breaching their duty to affirmatively further fair housing, defendant HACC deprived plaintiffs of rights secured to them by federal law, in violation of 42 U.S.C. § 1983.

90.     By approving the HACC's demolition application for the Celina Blake Homes without investigating the fair housing implications of its decision, defendant HUD violated its duty to administer HUD programs in a manner so as to affirmatively further fair housing, and have violated plaintiffs' rights under 42 U.S.C. §3608(e)(5); 24 C.F.R. §§ 960.103(b), 107.20(a), 903.7(o), 982.53(b), (c); and Exec. Order No. 11,063, 27 Fed. Reg. 11,527 (Nov. 20, 1962); Exec. Order No. 12,892, 59 Fed. Reg. 2,939 (Jan. 17, 1994).

91.     Plaintiffs are entitled to declaratory relief and judgment directly under the Administrative Procedure Act, 5 U.S.C. § 706.

## RELIEF REQUESTED

WHEREFORE, plaintiffs respectfully request that this Court:

A.      Declare that the acts and omissions of the defendants, as set forth above, violate Section 18 of the United States Housing Act of 1937, 42 U.S.C. § 1437p, and its implementing regulations;

B.      Declare that the acts and omissions of the defendants, as set forth above, violate the Fair Housing Act, 42 U.S.C. §3601 *et. seq.*, its implementing regulations, and Executive Orders 11063 and 12892; and the Quality Housing Work Responsibility Act of 1998, 42 U.S.C. § 1437c-1(d)(15).

C.     Declare that the actions of defendant HUD are arbitrary, capricious, and otherwise not in accordance with the law and without observance of procedure required by law in violation of the Administrative Procedure Act, 5 U.S.C. § 706.

D.     Enter a temporary restraining order and a preliminary and permanent injunction, without bond or upon a nominal bond, enjoining defendants from:

    (1)   Demolishing or otherwise rendering uninhabitable any portion or unit comprising the Celina Blake Homes;

    (2)   Involuntarily relocating plaintiffs from the Celina Blake Homes;

    (3)   Engaging in any relocation activities with respect to plaintiffs that fail to affirmatively further fair housing or have a disparate impact on African-Americans and families with children;

E.     Enter an order requiring Defendants to pay plaintiffs' reasonable costs and the attorneys' fees of the Sargent Shriver National Center on Poverty Law for the prosecution of this action in accordance with 42 U.S.C. § 1988 and 42 U.S.C. §3613(c)(2).

F.     Grant plaintiffs such further relief as this Court deems just and proper.

Dated: March 11, 2011

Respectfully submitted,

Attorney for the Plaintiffs

John M. Bouman
Katherine E. Walz
Samantha Tuttle
Sargent Shriver National Center on Poverty Law
50 E. Washington, Suite 500
Chicago, IL 60602
(312) 263-3830